480 A.2d 285

Richard V. SIRIANNI, Individually and as Administrator of the Estates of Nancy Landis Sirianni, a/k/a Nancy L. Sirianni and Baby Boy Sirianni, a/k/a Luca Landis Sirianni

v.

NUGENT BROTHERS, INC. and City of Philadelphia and Paul Rimmeir and Carmen Fichera.

**Appeal of Paul RIMMEIR.**

Richard V. SIRIANNI, Individually and as Administrator of the Estates of Nancy Landis Sirianni, a/k/a Nancy L. Sirianni and Baby Boy Sirianni, a/k/a Luca Landis Sirianni

v.

NUGENT BROTHERS, INC. and City of Philadelphia and Paul Rimmeir and Carmen Fichera.

**Appeal of CITY OF PHILADELPHIA.**

Superior Court of Pennsylvania.

Argued March 7, 1984.

Filed July 27, 1984.

146

Richard A. Kraemer, Philadelphia, for appellant (at No. 2063) and for appellee (at No. 2390).

Sarah C. Makin, Assistant City Solicitor, Philadelphia, for appellant (at No. 2390) and for appellee (at No. 2063).

Stephen G. Console, Philadelphia, for Nugent, appellee.

Before ROWLEY, MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

The City of Philadelphia and Paul Rimmeir have brought two separate appeals from the order of the Honorable Lawrence J. Prattis denying their separate requests for indemnity for their respective liabilities in tort for the unfortunate accident that resulted in the death of Nancy and Luca Landis Sirianni. In this consolidated opinion, we have undertaken to decide both appeals. We affirm.

On August 11, 1977, Mrs. Nancy Sirianni and the unborn child of the Siriannis were killed when a party wall, located between 1027 and 1029 North Third Street, Philadelphia,

collapsed upon Mrs. Sirianni during the demolition of the adjoining properties at 1027 North Third Street. Following the death of his wife and unborn child, Mr. Sirianni filed an action in trespass under the wrongful death and survival statutes naming as defendants the City of Philadelphia, Paul Rimmeir, and Nugent Brothers, Inc. Subsequently, Paul Rimmeir joined Carmen Fichera as an additional defendant.

The case proceeded to trial on February 17, 1981. The jury rendered a verdict in favor of Mr. Sirianni. In answer to special interrogatories, it found that Paul Rimmeir, Nugent Brothers, and the City had been negligent and that their negligence was a substantial factor in causing Mrs. Sirianni's death. The jury also concluded that the negligence of the City and Nugent Brothers was not an intervening and superseding cause so as to relieve Paul Rimmeir of liability. The jury found Nugent Brothers to be 50% negligent. The jury set the percentages of negligence for Paul Rimmeir and the City to be 25% respectively. Carmen Fichera was not found liable. The jury's verdict is not challenged in these appeals.

Although there is no indication in the record, it is apparent that the questions of indemnity were to be decided by the trial judge upon the whole record after the jury's verdict. Indemnity was sought by Paul Rimmeir from the City and Nugent Brothers and by the City from Paul Rimmeir and Nugent Brothers. The trial judge concluded that neither the City nor Paul Rimmeir were entitled to indemnity. The trial judge found that both were concurrent tortfeasors and, as such, were not entitled to indemnity. He also concluded that the enactment of the Comparative Negligence Act, 42 Pa.C.S.A. § 7102, abrogated the remedy of indemnity altogether.[1]

1. Because we have found that neither party is entitled to common law indemnity we need not consider the question. We do not approve or disapprove of the court's finding, but simply wait to consider it when it is again before us.

After examining the record of the Sirianni case, we have concluded that neither the City nor Paul Rimmeir were without active fault in the death of Mrs. Sirianni.

■ The remedy of indemnity is a device for shifting liability from one tortfeasor to another. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615 (1983). The key indemnity case in Pennsylvania is *Builder's Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). In *McCabe*, our Supreme Court set forth the law of indemnity as follows:

The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.... [The difference between primary and secondary liability] depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.

.     .     .     .     .

[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one,

even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

*Id.*, 366 Pa. at 325–26, 328, 77 A.2d at 370–71 (emphasis in original).

At trial it was established that since 1976, the properties adjoining the Sirianni property had deteriorated and had fallen into disrepair. In March of 1977, Paul Rimmeir had rented the properties to Carmen Fichera under a lease purchase agreement. The agreement permitted Fichera to demolish the buildings on the properties at his own expense. Fichera did not have the financial resources to hire a demolition contractor so, in the summer of 1977, Fichera began hand demolition of the structures on the properties with the help of a few men he had enlisted for what little money he could pay and his permission to keep the materials after the demolition.

On one occasion, Rimmeir stopped by the properties during Fichera's demolition work, and agreed to allow Fichera to use his rent money to pay his workers so that demolition could continue. During the demolition, Fichera sold the brick fronts of the building to an unidentified individual, the bricks to be picked up as the demolition proceeded. Allegedly without Fichera's knowledge and consent the facades were pulled off the building leaving them "open faced" to the street. After the fronts were taken, Fichera's men ceased working for him because they couldn't go upstairs to do anything.

Although Mr. Fichera indicated he did not speak to Rimmeir about the progress of the work, his deposition indicated that he had told Rimmeir that his men had stopped working. Sometime after Fichera's men quit, a City Building Inspector, after viewing the premises, filed a dangerous building report finding the partially demolished buildings to

be in an imminently dangerous condition and recommending immediate demolition.

There was ample evidence presented at trial that the partially demolished premises were left "unstable" and in a very dangerous condition.

Following their inspection the City slated the properties for emergency demolition and solicited telephone bids from contractors on the emergency demolition list. Nugent Brothers, Inc. was awarded the bid. The City allowed Nugent Brothers to begin work on August 11, 1977 even though it knew that Nugent Brothers did not have the proper insurance coverage, and having only used Nugent Brothers, Inc. on one prior occasion. Furthermore, the City did not adequately investigate Nugent. It called one reference in Montgomery County and allegedly spoke to a secretary at Philadelphia Redevelopment Authority where Nugent Brothers had been a qualified demolition contractor until removed from the list prior to the Sirianni accident. Moreover, the record reveals that a discrepancy existed about whether Nugent Brothers name was authorized to be included on the emergency demolition list prior to soliciting bids for the demolition.

On the morning of August 11, 1977, a city employee stopped by to see if Nugent Brothers had begun the work and departed after a short period of time. No qualified City inspector was available to check on Nugent as the regular inspector had been sick for quite some time. In the afternoon of August 11, 1977, Nugent Brothers negligently built a ramp of debris and used a bulldozer to run up the ramp and bang the party wall connecting the Rimmeir property and the Sirianni property. The decedent, Nancy Sirianni came out of 1029 North Third Street and told the foreman of Nugent Brothers that the party wall was shaking. She returned to her office after the foreman promised to be more careful. Within a few minutes, the party wall collapsed upon her.

Based on these facts the trial court charged on negligence principles including duties of possessors of land to

adjoining parties for unsafe conditions, negligent selection of an independent contractor, the peculiar risk doctrine, whether Nugent Brothers exercised reasonable care in performing the demolition work, and whether the conduct of the City and Nugent Brothers was an intervening and superseding cause relieving Paul Rimmeir of liability.

The jury's verdict affixing liability as to Nugent Brothers, Paul Rimmeir, and the City is indicative of their finding that the negligence of all parties actively contributed to the death of Mrs. Sirianni.

The jury's verdict indicated that it considered the dangerous condition of the premises and improper demolition practices as concurring causes of the death of Mrs. Sirianni. That the dangerous condition of the property was considered an active contributing factor to Mrs. Sirianni's death is indicated by the jury's rejection of the intervening and superseding cause defense of Paul Rimmeir. Moreover, the jury could have found the City liable for both negligent selection of contractor, the peculiar risk doctrine, and failure to supervise the demolition. Any one of these theories would support the conclusion that the City's negligent conduct was an active contributing factor to causing the accident. In short, the jury could have concluded that negligence of each of these parties was an integral part of the causation of the accident.

As both Paul Rimmeir and the City participated at trial, they are bound by the facts established in the record thereof. *Builder's Supply Co. v. McCabe, supra.* Because those facts establish the active fault of both parties seeking indemnity, we hold that neither is entitled to indemnity. *See Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983); *Builder's Supply Co. v. McCabe, supra; Flynn v. City of Chester,* 429 Pa. 170, 239 A.2d 322 (1968); *see also Stearns v. Mt. Lebanon Township,* 167 Pa.Super. 341, 74 A.2d 779 (1950); *Golden v. Philadelphia,* 162 Pa.Super. 247, 57 A.2d 429 (1948); *Wright v. City of Scranton,* 128 Pa.Super. 185, 194 A. 10 (1937).

■ The City also claims indemnity from Nugent Brothers, Inc. based upon contract. The City asserts that its contract with Nugent Brothers included the following indemnity provision found in the Standard Contract Requirements for the City's Procurement Department:

Suits and claims.—Contractor agrees to indemnify, defend and save harmless, the City, all its officers and subordinates, from all suits and actions of every name, nature, and description brought against them or any of them for or on account of any damages or loss sustained by any party through the Contractor or his agents, servants or employees in the performance or subsequent to the completion of the work under the contract whether such injury or damage be due to the negligence or the inherent nature of the work or to the negligence of the City of Philadelphia, its servants, agents or employees. It is not the intention of this section or of anything herein provided to confer a third party beneficiary right of action upon any person whatsoever and nothing hereinbefore or hereinafter set forth shall be construed as to confer upon any person other than the City of Philadelphia a right of action either under this contract or in any manner whatsoever.

The City argues that this clause was incorporated into its demolition contract because the clause is expressly incorporated into the specifications governing all procedures and requirements which must be met by contractors receiving demolition work.[2] Nugent Brothers argues that the City has "failed to explain, ... how various provisions from City manuals were incorporated into the contract between Nu-

2. The incorporation provision in the Demolition Specifications reads as follows:

APPLICABLE SPECIFICATIONS—The Standard Contract Requirements of the City of Philadelphia, issue of April, 1976, or latest revision, shall become part of the specifications. If the Special Specifications, the proposal, or the plans modify any of the Standard Contract Requirements or Standard Specifications, they shall supersede the portions of the Standard Contract Requirements or Standard Specifications with which they conflict. (Ref. Clause 15 Standard Contract Requirements.)

gent and the City...." Brief of Nugent Brothers (Appellee No. 2390 Philadelphia, 1982) at 16–17. Our review of the record convinces us that there is no evidence from which we may conclude that the indemnification clause asserted by the City is part of its demolition contract with Nugent Brothers.

We note initially that the record does not clearly indicate the entire procedure used by the City to award emergency demolition contracts. The testimony of John Kennedy at trial indicates that the City used a telephone bidding procedure to award emergency demolition. We have found no explanation of whether the contractual relationship between the City and Nugent Brothers was entirely oral, or whether there was a written memorial of the contract between them executed before the work began. Nothing in the record indicates that Nugent Brothers orally or otherwise agreed to perform the contract in accordance with the standard demolition specifications of the City or agreed to its standard contract requirements. Nor do we have any basis from which we can conclude that the course of dealings between the parties was such as to show Nugent Brothers' assent to an indemnification provision. In short, we have found nothing in the record before us to substantiate the City's argument that the indemnification provision was incorporated into the demolition contract between it and Nugent Brothers by reference.

The City cites *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967) in support of its incorporation theory. However, this case is clearly distinguishable. In *Westinghouse* our supreme court concluded that the course of dealings between the parties showed that the defendant had assented to an indemnification provision. The evidence of course of dealings showed that in prior contracts between the parties assent to and the terms of the contract were manifested in the exchange of purchase orders and acknowledgments and that plaintiff's purchase order *expressly* incorporated by reference an appendix containing an indemnification clause. Thus, the presence of a

clear incorporation distinguishes *Westinghouse* from the instant case.

Absent some evidence that the indemnification clause was incorporated by reference, we cannot say that Nugent Brothers assented to indemnify the City and is thereby bound by an indemnification clause that would require Nugent Brothers to save the City harmless from liability caused by the City's own negligence.

We note further that the City asked only for common law indemnity from Nugent Brothers in its motion for indemnity. However, we need not consider that claim as it was not asserted in this appeal.

Because of our disposition of the City's contract indemnity claim, we need not consider whether the City waived the benefit of the clause, and we will not consider the City's claim for damages based upon breach of contract to procure insurance as that claim is not addressed in the order from which this appeal has been taken or properly raised as an issue in this appeal.

Order affirmed.