506 A.2d 868

**Richard V. SIRIANNI, Individually and as Administrator of the Estates of Nancy Landis Sirianni a/k/a, Nancy L. Sirianni and Baby Boy Sirianni, a/k/a Luca Landis Sirianni,**

**v.**

**NUGENT BROS., INC. City of Philadelphia and Paul Rimmeir and Carmen Fichera.**

**Appeal of CITY OF PHILADELPHIA.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1985.

Decided March 19, 1986.

Barbara W. Mather, City Sol., Barbara R. Axelrod, Deputy City Sol., Michael B. Tolcott, Asst. City Sol., for appellant.

Richard A. Kraemer, Philadelphia, for Rimmeir.

Joseph R. Livesey, Philadelphia, for Nugent Bros., Inc.

Stephen R. Bolden, Philadelphia, for Sirianni.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This appeal is from an order of the Superior Court affirming an order of the Court of Common Pleas of Philadelphia which denied a request for indemnity made by the appellant.

This case arose out of an accident which occurred on August 11, 1977. On that day, an employee of Nugent Brothers, acting pursuant to a demolition contract entered into between the City of Philadelphia and Nugent Brothers, Inc., caused a brick wall to crash into the home of Mr. & Mrs. Richard V. Sirianni. The accident took the life of Nancy Sirianni and her unborn child, and decimated the life of the survivor, Richard V. Sirianni.

As a result of this tragic accident Mr. Sirianni instituted suit against Nugent Brothers, Inc., as the contractor; Paul

Rimmeir as the owner of the premises from which the brick wall fell; Carmen Fichera as the nominal tenant of the premises from which the brick wall fell; and the City of Philadelphia, who was responsible for hiring Nugent Brothers to perform the demolition. The case was tried before a jury panel, presided over by the Honorable Lawrence Prattis of the Court of Common Pleas of Philadelphia. Prior to return of the verdict by the jury, Mr. Sirianni executed joint tortfeasors releases in favor of the City for 500,000 dollars, and Nugent Brothers for 300,000 dollars. Nevertheless, both defendants remained parties to the action for purposes of determining contribution and indemnity amongst the defendants.

The jury returned a verdict in favor of the plaintiff in an amount in excess of 1.3 million dollars. On the issue of negligence the jury apportioned the defendants' comparative negligence as follows:

> Nugent Brothers, Inc. . . . . . . . . . . 50%
> City of Philadelphia . . . . . . . . . . . . 25%
> Paul Rimmeir . . . . . . . . . . . . . . . . . 25%
> Carmen Fichera . . . . . . . . . . . . . . . 0%

The jury also found that neither the City's actions nor the actions of Nugent Brothers constituted a superseding or intervening cause such as would have absolved Paul Rimmeir of the consequences of his negligence.

Post-trial motions were filed by the City seeking indemnity against Nugent Brothers and against Paul Rimmeir. Rimmeir also sought indemnity against Nugent Brothers, as well as against the City. These motions were denied by the trial court, a decision which the Superior Court affirmed. Thereafter, the City sought permission to appeal the Superior Court's decision affecting their claim of indemnity against Paul Rimmeir.[1] Upon petition we granted allocatur. We now affirm the order of the Superior Court.

1. The City did not seek to appeal the decision as to Nugent Brothers, and as such the propriety of the lower courts' orders relating to that defendant is not a subject of this opinion.

The issue presented in this case is whether a defendant, found by a jury to have been equally negligent as another defendant, can obtain common law indemnity against that defendant.

The underlying facts, as adduced at trial, establish the following. At the time of the accident appellee, Paul Rimmeir, owned a dilapidated property which adjoined the Sirianni residence. In March, 1977, Rimmeir rented the property to Carmen Fichera under a lease purchase agreement. In accord with this agreement Fichera was permitted to demolish the property. Fichera attempted to tear down the structure, but proceeded in an extremely dangerous manner. Eventually, Fichera abandoned his efforts, leaving the property structurally unsound, but still in the possession of Rimmeir. Thereafter, Rimmeir was advised by a city building inspector that the property constituted an imminent danger and that it would have to be immediately demolished. The City listed the property for emergency demolition and solicited telephone bids from contractors on their emergency demolition list. As a result of this process Nugent Brothers was awarded the bid. This award was made despite the fact that Nugent Brothers did not have proper insurance coverage, and had previously been removed from the Philadelphia Redevelopment Authority's list of approved demolition experts. In addition, there was evidence at trial that Nugent Brothers did not have the necessary qualifications to be on the emergency list at all. Nevertheless, on August 11, 1977, Nugent Brothers began the demolition work, and, but for a cursory visit by a city employee who was to determine when the contractor had begun, the project was permitted to proceed without the presence of a city inspector. The contractor proceeded in a dangerously unprofessional manner, ramming a front end loader into the wall adjoining the Sirianni property, thereby causing the accident.

The City now seeks to argue that despite the facts that they negligently chose a contractor, and negligently permit-

ted that same contractor to proceed without supervision, that somehow the primary liability for this tragedy should rest with the owner of the premises who, though he did allow the premises to deteriorate, had no part in choosing the catalyst who transformed this "accident waiting to happen" into a catastrophe.

In applying the law of indemnity to the facts of this case the Superior Court concluded that "[b]ecause those facts establish the active fault of both parties seeking indemnity, we hold that neither is entitled to indemnity." *Sirianni v. Nugent Brothers*, 331 Pa.Super. 145, 152, 480 A.2d 285, 289 (1984). The City, in bringing this appeal, has myopically latched on to the use of the phrase "active fault" to argue that the court below decided this case on the basis of an outdated theory, i.e., the "active/passive" test formulated and later abandoned by the courts of New York State. *See Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). We disagree with this characterization.

As the Superior Court correctly noted, the concept of common law indemnity in Pennsylvania was summarized by this Court in the case of *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). There this Court, speaking through Mr. Justice Horace Stern, described the right of indemnity thusly:

> The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. . . .

*Id.*, 366 Pa. at 325, 77 A.2d at 370 (emphasis in original).

Although some legal commentators have suggested that the need for common law indemnity has dissipated with the

modern day acceptance of the theories of comparative negligence [2] and contribution,[3] Prosser and Keaton on Torts p. 344 (5th ed. 1984); in Pennsylvania our legislature has specifically decided that the acceptance of contribution "does not impair any right of indemnity under existing law." 42 Pa.C.S. § 8323. Thus, the law of *Builders Supply* remains viable today. However, the adoption of those modern day fault sharing mechanisms can aid in fully understanding what this Court meant in *Builders Supply*.

In further explaining the right of indemnity, the Court said:

> [The difference between primary and secondary liability] depends on a difference in the charac*ter* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.

> .    .    .    .    .

> [S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.

*Id.*, 366 Pa. at 326, 328, 77 A.2d at 370, 371 (emphasis in original). *See also Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969).

■ Thus, unlike comparative negligence and contribution, the common law right of indemnity is not a fault

2. *See* 42 Pa.C.S. § 7102. Act of April 28, 1978, P.L. 202 No. 53, § 10(89).

3. *See* 42 Pa.C.S. § 8321 *et seq.* Act of July 9, 1976, P.L. 586, No. 142, § 2.

sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor. Rather, it is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.

In this case the City has misconstrued this basic tenet of indemnity and attempted to argue that the right to indemnity should depend upon whether one bears the "primary responsibility" for a hazard.[4] As a concomitant they also imply that an owner of property must be held to always bear that "primary responsibility." Such an argument not only misapprehends the lessons of *Builders Supply, supra,* but suggests an unprecedented immunity for municipalities performing regulatory functions.

■ Whether an owner of property may be primarily, or ultimately, responsible for injuries occurring on that property is not the proper inquiry. Rather a court must look to whether the party seeking indemnity had *any part* in causing the injury. *See Helz v. Pittsburgh,* 387 Pa. 169, 127 A.2d 89 (1956). As was said in *Builders Supply:*

> In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a

---

4. In this vein the City seems to believe that it was the building's disrepair which caused the subject injuries. While the condition of the building may have been a "but for" cause of injury, it is clear that it was the negligent demolition of the building which necessitated the underlying suit.

primary and secondary one, even though one may have been very much more negligent than the other.

*Id.,* 366 Pa. at 328, 77 A.2d at 371 (emphasis in original).

In this case, as the Superior Court noted "the jury could have found the City liable for ... negligent selection of contractor, the peculiar risk doctrine,[5] and failure to supervise the demolition." *Sirianni, supra,* 331 Pa.Super. at 152, 480 A.2d at 289. The court's characterization of the City's actions as "active fault" was not a reliance on an outdated theory. Rather it was a correct statement of fact that the City participated in the events leading up to the tragedy, and were not merely liable by operation of law.

We affirm the order of the Superior Court.

**5.** *See Brletich v. United States Steel Corp.,* 445 Pa. 525, 533, 285 A.2d 133, 136 (1971); *Curry Coal Co. v. M.C. Arnoni Co.,* 439 Pa. 114, 119, 266 A.2d 678, 681 (1970).