J.A13037/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STANLEY STOPYRA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PECO ENERGY COMPANY AND FIRST | : | |
| CHICAGO TRUST COMPANY OF NEW | : | |
| YORK AGENT, | : | |
| | : | |
| v. | : | |
| Appellees | : | |
| | : | |
| BANK OF AMERICA, N.A., SUCCESSOR | : | |
| TO FLEET NATIONAL BANK, SUCCESSOR | : | |
| TO FIRST VALLEY BANK A/K/A SUMMIT | : | |
| BANK, | : | |
| | : | No. 2559 EDA 2013 |
| Appellants | : | |

Appeal from the Order Entered July 31, 2013
In the Court of Common Pleas of Bucks County
Civil Division No(s).: 1997-04309

| | | |
|---|---|---|
| STANLEY STOPYRA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PECO ENERGY CO. & FIRST CHICAGO | : | |
| TRUST CO. OF NEW YORK AGENT, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| DONNA RAIMONDO AND FIRST VALLEY | : | |
| BANK A/K/A SUMMIT BANK AND VICTOR | : | |
| RAIMONDO, | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | No. 2787 EDA 2013 |

J. A13037/14

Appeal from the Judgment Entered September 5, 2013
In the Court of Common Pleas of Bucks County
Civil Division No(s).: 97-004309-18-1

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 24, 2015**

Appellant/Cross-Appellee, Bank of America, N.A., successor to Fleet National Bank, successor to First Valley Bank a/k/a Summit Bank, ("Summit") appeals from the order entered in the Bucks County Court of Common Pleas holding that Appellee/Cross-Appellant, First Chicago Trust Company of New York, ("First Chicago") is entitled to indemnification for the settlement paid to the plaintiff, Stanley Stopyra, in the underlying action. The court ordered Summit to indemnify First Chicago in the amount of $400,000.00 plus prejudgment interest. Summit contends First Chicago's claims are barred by (1) the applicable statute of limitations and (2) the imposter rule embodied in the Uniform Commercial Code. Summit also claims the trial court erred in determining its holdings were required under the law of the case doctrine. We affirm.

A prior panel of this Court adopted the trial court's summary of the facts of the underlying case as follows:

> Plaintiff Stanley Stopyra and his wife participated in the Dividend Reinvestment and Stock Purchase Plan [the "Plan"] offered to stockholders of PECO

---

[*] Former Justice specially assigned to the Superior Court.

- 2 -

Energy. Defendant, First Chicago is the registered stock agent for PECO. As of September 20, 1991, Plaintiff owned $263,644.89 worth of stock in PECO.

Victor Raimondo is Plaintiff's son-in-law. He gained access to Plaintiff's confidential information regarding the stock which he used to steal the majority of Plaintiff's shares. Between November of 1991 and June of 1995, Raimondo used the confidential information to cause Defendant First Chicago to sell blocks of shares held by Plaintiff. The checks were then sent to Raimondo at his address. He forged Plaintiff's endorsement and deposited them into an account he had opened with Summit Bank in the names of the Stopyras and himself. Plaintiff filed suit against PECO and First Chicago in June of 1997 for breach of contract, negligence and fraud.

On April 29, 1998, PECO and First Chicago Trust filed a Joinder Complaint against Summit Bank. The Joinder Complaint alleged that by taking checks from Victor Raimondo and receiving payments thereon from Defendant First Chicago, Summit Bank breached the presentment warranties set for [sic] in 13 Pa.C.S.A. §§ 3417(a) and/or 4208(a).

Thereafter on November 30, 1999, Summit Bank filed its Motion for Summary Judgment. The Motion asserted that the Joinder Complaint should be dismissed as neither PECO nor First Chicago was the drawee which had made payment and, therefore, neither had standing by which to bring the breach of presentment warranties claim. Summit asserted that the drawee on the checks cashed by Raimondo was the first National Bank of Chicago and not First Chicago Trust Company of New York. . . .

Trial Court Opinion, 7/9/01, at 1-2.

**Stopyra v. PECO Energy Co.**, 1977 EDA 2000 (unpublished memorandum

at 2) (Pa. Super. Dec. 14, 2001).

- 3 -

On February 29, 2000, the trial court granted Summit's motion for summary judgment. On April 10, 2000, First Chicago settled with the Stopyras for $400,000. The court entered an order on April 10th confirming the stipulation as to the settlement. On June 13, 2000, a praecipe to enter judgment on the April 10th order was filed and time stamped July 13, 2000. On July 13th, PECO and First Chicago appealed from the trial court's order granting summary judgment in favor of Summit contending the trial court erred because PECO and First Chicago had a valid claim against Summit under the Uniform Commercial Code and the common law and that the defense of the statute of limitations did not apply. This Court reversed, concluding that "summary judgment was improperly granted, the case should proceed to trial for a determination of the factual disputes regarding liability and what portion of damages, if any, may be precluded by the statute of limitations." **Stopyra**, 1977 EDA 2000, at 7.

On May 8, 2013, a stipulation of facts between the parties was filed. The parties stipulated, *inter alia*, to the following facts: First Chicago was the stock transfer agent for PECO. Stip. Facts, 5/8/13, at ¶ 3. First Chicago was the record keeper of the Plan. *Id.* at ¶ 4. A stockholder in the Plan could sell any portion of the PECO stock in his account at any time. *Id.* at ¶ 8. "As the record keeper/custodian for the Plan, First Chicago would receive instructions from Plan participants and on their behalf, execute purchases and sales of PECO stock and pay dividends to PECO shareholders who held

such stock through the Plan." ***Id.*** at ¶ 9. It sent monthly statements to all participants in the plan. ***Id.*** at ¶ 10. "**First Chicago did not employ signature cards during the relevant times herein, nor did First Chicago otherwise confirm the signatures on documents submitted by its customers.**" ***Id.*** at ¶ 14 (emphasis added). **Summit's "procedure required that if a new account is opened in the name of more than one individual with no prior account, all of the individuals must appear personally at the bank and must provide identification to open the account.**" ***Id.*** at 17 (emphasis added).

"Beginning in 1991, Raimondo devised a fraudulent scheme to steal Stopyra's PECO stock." ***Id***. at ¶ 23. "In furtherance of the scheme, Raimondo fraudulently notified First Chicago, as record keeper for the Plan, to change the address on Stopyra's account . . . to care of Raimondo" at his address. ***Id.*** at ¶ 24. "From approximately November 1991 until June 1995, Raimondo, on thirty-three (33) separate occasions, submitted fraudulent written instructions to First Chicago instructing First Chicago to sell specified numbers of PECO stock held in Stopyra's account. ***Id.*** at ¶ 26.

"In each instance, First Chicago sold the specified number of shares of Stopyra's stock, and a check was issued for the amount of the PECO stock sale proceeds. Each of these checks stated the names and address of the payees as follows: Stanley A. Stopyra and Edith R. Stopyra Ten Ent Care Rimondo [sic] . . . ." ***Id.*** at ¶ 27. Some of the checks indicated that they

were payable at First Chicago or First National Bank of Chicago ("First National").[1] *Id.* at 28. "First National was not sued by Stopyra and is not a party to this action." *Id.* at ¶ 30. "First Chicago mailed each of the checks to the address of record for Stopyra's account at the time that check was issued: [Raimondo's address]." *Id.* at ¶ 31.

"In order to prevent Stopyra from being alerted to the fraudulent change of address by the fact that he was no longer receiving monthly account statements, Raimondo fraudulently prepared monthly counterfeit statements of account, which did not disclose the sales of PECO stock that he had fraudulently procured, but instead falsely showed that the balance of PECO stock in the account continued to grow." *Id.* at ¶ 35.

"In November [1991][2], Raimondo opened a bank account at First Valley/Summit . . . in the name "Stanley A. Stopyra or Edith Stopyra or Victor Raimondo," without the apparent knowledge or consent of Stopyra or Edith . . . ." *Id.* at ¶ 40. "The account was opened on a signature card provided by First Valley/Summit, that had signature lines for the signatures of all three account holders—i.e., Stopyra, Edith, and Raimondo. **The purported signatures of Stopyra and Edith on the signature card are not genuine but rather were forged by Raimondo**." *Id.* at ¶ 42.

---

[1] First National is an affiliate of First Chicago. N.T., 5/28/13, at 14.

[2] The stipulated facts inaccurately state that the bank account was opened in 2001.

"**At the time that the account was opened, Stopyra had not had a prior account at First Valley/Summit**." *Id.* at ¶ 43 (emphasis added). "**First Valley/Summit has no evidence establishing that either Stopyra or Edith appeared personally at the bank and provided personal identification in connection with opening the account.**" *Id.* at ¶ 44 (emphasis added). "On each occasion, First Valley/Summit accepted the checks for deposit and, after final payment, permitted Raimondo to withdraw the proceeds of the checks from the bank accounts." *Id.* at ¶ 51.

The trial court found First Chicago's claim for indemnification was not barred by the statute of limitations and that Summit's negligent failure to enforce its own policies caused the loss suffered by the Stopyras. Trial Ct. Op., 7/30/13, at 10. Post-trial motions were filed by Summit, PECO and First Chicago. The trial court denied the motions. This appeal and cross-appeal followed. Summit filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[3] The trial court filed a responsive opinion.

Summit raises the following issues for our consideration:

> 1. Did the Trial Court err as a matter of law in holding that any claims of [PECO and/or First Chicago] were not barred

---

[3] We note that Summit's Rule 1925(b) statement is not concise and consists of eight pages including arguments addressing the issues raised. However, we do not find waiver. *See Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184, 1197 (Pa. Super. 2007) (holding seven-page Rule 1925(b) statement not so vague as to preclude understanding of issues raised).

by the applicable Statutes of Limitations with the exception of the last check paid on June 26, 1995 in the amount of $9,537.25?

2. Did the Trial Court err as a matter of law in holding that [PECO and/or First Chicago] have claims against [Summit] for contribution and/or indemnification?

3. Did the Trial Court err as a matter of law to the extent it determined its holdings were required under the law of the case doctrine with respect to the rulings of the Superior Court in its 12/14/01 Opinion remanding the case to the Trial Court?

4. Did the Trial Court err as a matter of law in failing to bar any claims of [PECO and/or First Chicago] under the "impostor rule" embodied in the Uniform Commercial Code (the "UCC") as adopted in Pennsylvania (13 Pa.[C.S.] § 3405 of the prior version of the UCC and 13 Pa.[C.S.] § 3404 of the current version of the UCC)?

Summit's Brief at 3.[4]

PECO and First Chicago raise the following issues for our review:

1. Where this Court in a prior appeal set the standard for determining whether First Chicago had standing to enforce the U.C.C. warranty of presentment, was the lower court free to apply a narrower standard on remand?

2. Where this Court held in the prior appeal that First Chicago was a drawee of the fraudulent checks, was Summit free to argue on remand that First Chicago had not established that it was not a drawee?

3. Can Summit defeat First Chicago's U.C.C. claim for breach of warranty by invoking the U.C.C. "imposter rule," where the U.C.C. provision on presentment warranties makes clear that [Appellant] is liable?

PECO and First Chicago's Brief at 4.

---

[4] For ease of disposition, we have reordered Summit's issues on appeal.

First, we consider Summit's contention that First Chicago's claims were barred by the applicable statutes of limitations with the exception of the last check paid on June 26, 1995 in the amount of $9,537.25. Summit's Brief at 35. Summit avers that First Chicago's claim against it is barred by the applicable statute of limitations for a forgery claim under the prior version of the UCC, which was two years. **Id.**

"It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment . . . is premature." ***McClure v. Deerland Corp.***, 585 A.2d 19, 23 (Pa. Super. 1991) (citation and punctuation omitted). "Under Pennsylvania law, actual payment, and not just a verdict or judgment, is required." **Id.**; ***accord Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh***, 767 A.2d 555, 563 (Pa. Super. 2001).

The trial court opined:

> The threshold question in determining whether First Chicago may proceed on a claim of indemnification is whether the action was filed within the applicable statute of limitations period. Pursuant to 42 Pa.C.S.[ ] § 5527,[5]

---

[5] Section 5527 provides: "Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. § 5527(b). We note that the statute was amended, adding Subsection (a), effective September 1, 2006.

a six year statute of limitations applies to claims for indemnification. An indemnity claim does not accrue until the indemnitee's liability is fixed by a judgment against, or payment in settlement by, the indemnitee.

The statute of limitations on First Chicago's indemnity claim began on the date that [it] settled with the Stopyras, April 10, 2000 . . . . When Summit was joined as an additional defendant on April 29, 1998, the statute of limitations on the indemnity claim had not only not expired, it had not even started to run. First Chicago's indemnification claim against Summit is therefore not barred by the statute of limitations.

Trial Ct. Op. at 7 (footnotes omitted). We agree First Chicago's indemnification claim is not barred by the statute of limitations.

Next, we address Summit's contention that the trial court erred in finding that First Chicago had a claim against it for indemnification and contribution.[6] Summit's Brief at 23. Summit contends that because it had no liability to Plaintiff Stopyra, no right of indemnification to First Chicago can exist. *Id.* at 26-27. Accordingly, in the absence of an express contractual agreement for indemnification, the sole remedies available are those in the Uniform Commercial Code. *Id.* at 27. Summit avers there are no Pennsylvania cases in support of this proposition. *Id.* at 28.[7]

---

[6] Summit also argues that the trial court erred in holding that PECO and First Chicago have claims against it for contribution. The trial court did not find that First Chicago contributed to Stopyra's losses. Trial Ct. Op. at 9. It found First Chicago is entitled to indemnification. *Id.* at 6. We need not address the issue of contribution.

[7] We note that Summit addresses the issue of the breach of warranty claim in one paragraph and contends that because First Chicago is not a drawee it

In ***Genaeya Corp. v. Harco Nat. Ins. Co.***, 991 A.2d 342 (Pa. Super.

2010), this Court stated where

> the parties submitted th[e] matter to the trial court on stipulated facts and the question of whether or not [the appellant] has a duty to defend and/or indemnify its insured [ ] is a question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary.

***Id.*** at 346.

> The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. . . .

> \* \* \*

> Thus, unlike comparative negligence and contribution, the common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor. Rather, **it is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant**

---

cannot assert a breach of warranty claim against Summit. Summit's Brief at 29. Summit did not raise this issue in the court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.") Therefore, this issue is waived.

> **who was actually responsible for the accident which occasioned the loss.**

***Sirianni v. Nugent Bros., Inc.***, 506 A.2d 868, 870-71 (Pa. 1986) (citation omitted and emphasis added).

In the case *sub judice*, the trial court found First Chicago was entitled to indemnification for the settlement paid to the Stopyras.[8]  The court opined:

> First Chicago . . . argues that Summit is liable for . . . indemnification for the $400,000 settlement paid by First Chicago to the Stopyras because Summit's negligent conduct cause the Stopyras' loss.  The Stopyras suffered two separate injuries.  The first injury occurred when Raimondo changed the address of record on the Stopyras' account and then initiated fraudulent sales orders.  The second injury occurred when Raimondo opened a joint bank account at Summit and was able to convert the First Chicago checks to cash.  If Summit had not allowed the checks to be cashed, the Stopyras' losses would have been limited to the change in value of the stock which was fraudulently sold.

Trial Ct. Op. at 6 (footnotes omitted).  We agree no relief is due.

As this Court stated in the first direct appeal, Summit had no part in the first separate injury to the Stopyras.  ***Stopyra***, 1977 EDA 2000 at 5.  However, Summit's negligence in allowing the checks to be cashed, by not following its own policies, resulted in the loss suffered by the Stopyras.  ***See***

---

[8] We note that although the trial court refers to the Stopyras, the complaint was filed in the name of Stanley Stopyra as Plaintiff.

***Sirianni***, 506 A.2d at 870-71.  Therefore, we discern no error in the trial court's holding that Summit was liable to First Chicago for indemnification.[9] ***See Genaeya Corp.***, 991 A.2d at 346.

Lastly, Summit argues that the trial court erred in finding that First Chicago has a claim against it for indemnification based upon the law of the case.  Summit contends that based upon the exceptions to the law of the case doctrine, *viz.*, intervening change in controlling law, substantial change in the facts, and/or where the prior holding was clearly erroneous rising to the level of manifest injustice, the trial court erred.  Summit's Brief at 43. We find no relief is due.

We consider whether the law of the case doctrine is applicable in the case *sub judice*.  This Court holds that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court."  ***Bolick v. Com.***, 69 A.3d 1267, 1269 (Pa. Super. 2013) (citation and punctuation omitted), *appeal denied*, 84 A.3d 1061 (Pa. 2014).  This Court in the prior appeal opined:

> The trial court found that Summit was entitled to summary judgment because "First Chicago failed to produce evidence of facts essential to the cause of action which, in a jury trial would require the issues to be submitted to a jury . . ."  Trial Court Opinion, 7/9/11, at 4.

\*   \*   \*

---

[9] Given our resolution of this issue, we need not address issue four.

[W]e consider whether the trial court erred in granting summary judgment because it found there could not be any claim for indemnification or contribution. The trial court reasoned that the acts committed by PECO and First Chicago resulted in an injury to the Plaintiff separate from the actions committed by Summit. Because we find this to be an oversimplification of the facts, we must again reject the trial court's conclusion.

It is undisputed that PECO was contacted by someone purporting to be Stanley Stopyra and that individual was requesting that stocks held in the name of the Stopyras be sold and the proceeds be sent to a certain address. But unbeknownst to the Stopyras, their son-in-law Victor Raimondo sent a change of address form to PECO and was able to divert mail originally sent from PECO to the Stopyras. Mr. Raimondo then defrauded the Stopyras by initiating a series of fraudulent sales orders. First Chicago, a trust company and record keeper for the PECO stock reinvestment plan, issued a series of checks in the name of Stanley and Edith Stopyra, and Raimondo intercepted them. We do not disagree with the trial court that this was the first separate injury to the Plaintiff. In fact, Mr. Stopyra filed suit against PECO and First Chicago seeking to have the transactions reversed and be placed back in the position of owning the stock that was wrongly sold. The fact that the measure of the Stopyras' injury may depend on whether the value of the stock has since increased or decreased illustrates the type of injury Mr. Stopyra suffered. Clearly, Summit had no part in this phase of Raimondo's scheme against the Stopyras. However, once the stock was converted to more liquid funds in the form of checks issued by First Chicago drawn on their account with First National Bank of Chicago, Raimondo further succeeded in his theft scheme. Now **he was able to convert the checks to cash because Summit allowed him to fraudulently open a joint account at their bank in the names of the Stopyras. Presumably, Summit's negligence is failing to demand proof of identification from the Stopyras before letting Raimondo open an account in their name**. **Summit also accepted the PECO checks with a forged endorsement.** The Stopyras' losses would have been limited to the change in value of the stock that was

> fraudulently sold had Summit not allowed the checks to be negotiated by Raimondo. Their losses were compounded once the checks were negligently honored. Therefore, **while PECO and First Chicago are liable for their breach of contract and negligence to the Stopyras**, <u>**Summit may be held liable over to PECO and First Chicago for allowing the checks to be negotiated**</u>. Accordingly, **the trial court erred in granting summary judgment on this basis**.

***Stopyra***, 1977 EDA 2000 at 3, 5-6 (citations omitted and emphases supplied).

Summit's contention that the trial court "determined its **holdings were required under the law of the case doctrine**," is without merit. The trial court stated: "[T]he Superior Court reversed this [c]ourt's Order granting summary judgment and remanded for an evidentiary hearing on First Chicago's two remaining claims of breach of presentment warranty and contribution or indemnification, and whether the statute of limitations would preclude recovery." Trial Ct. Op. at 2.

The prior panel of this Court did not resolve the issues of whether Summit was liable to PECO and First Chicago for indemnification, or whether the statute of limitations precluded recovery. ***See Bolick***, 69 A.3d at 1269. This Court opined that Summit "**may be held liable** over to PECO and First Chicago for allowing the checks to be negotiated." ***See Stopyra***, 1977 EDA 2000 at 6 (emphasis added). The trial court did not conclude that the law of the case applied.

Given our resolution of the indemnification issue, we need not address the issues raised by PECO and First Chicago.[10]

For all of the foregoing reasons, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015

---

[10] We note PECO and First Chicago state: "First Chicago and PECO have cross-appealed from the judgment rejecting their U.C.C. claim, solely as a protective matter. If the Court affirms the indemnification judgment, then there is no need to reach the issues raised by this cross-appeal." PECO and First Chicago's Brief at 53-54.