**PENNSY SUPPLY, INC., Appellant**

v.

**Robert M. MUMMA, II, Kimbob Inc. and Caco Three Inc. d/b/a McDermitt Concrete, Inc., Appellees.**

**Pennsy Supply, Inc., Appellant**

v.

**Robert M. Mumma, II, Kimbob Inc. and Caco Three Inc. d/b/a McDermitt Concrete, Inc., Appellees.**

**Pennsy Supply, Inc., Appellee**

v.

**Robert M. Mumma, II, Kimbob Inc. and Caco Three Inc. d/b/a McDermitt Concrete, Inc.,**

**Appeal of Robert M. Mumma, II, Appellant.**

**Pennsy Supply, Inc., Appellee**

v.

**Robert M. Mumma, II, Kimbob Inc. and Caco Three Inc. d/b/a McDermitt Concrete, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 15, 2006.
Filed March 20, 2007.

Matthew M. Haar, Harrisburg, for Pennsy.

Thomas Scott, Harrisburg, for Mumma.

BEFORE: TODD, BENDER and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This matter involves what can be described as a property dispute between Pennsy Supply, Inc. ("Pennsy"), Robert Mumma II ("Mumma"), and companies with which Mumma is closely associated, *i.e.*, Kimbob, Inc. ("Kimbob") and Caco Three, Inc. d/b/a McDermitt Concrete, Inc. ("McDermitt").[1] The trial court entered several orders from which the parties appeal. The court entered orders on April 18, 2005, and April 19, 2005. Pennsy and Mumma appeal from these orders. These appeals are docketed in this Court at 691 MDA 2005, 706 MDA 2005, and 842 MDA 2005. The trial court later entered an order finding the Defendants in contempt of its April 19, 2005, order. The Defendants appeal from this order. This appeal is docketed in this Court at 627 MDA 2006.[2] We have consolidated the appeals *sua sponte.*

¶ 2 After review, we dispose of the various appeals as follows. As to the appeal

---

* Retired Senior Judge assigned to the Superior Court.

1. We will refer to Mumma, Kimbob, and McDermitt collectively as "the Defendants."

2. After the trial court entered its order finding the Defendants in contempt, the Defendants filed a Motion for Post Trial Relief. The court entered an order on March 21, 2006, in which it denied the Defendants' motion. In addition to filing notice that they intended to appeal the trial court's order finding them in contempt, the Defendants filed a separate Notice of Appeal in which they gave notice that they were appealing the trial court's March 21, 2006, order. That appeal was docketed in this Court at 667 MDA 2006. This Court *sua sponte* dismissed this appeal as being duplicative of the Defendants' appeal docketed at 627 MDA 2006.

docketed at 691 MDA 2005, we affirm the April 18, 2005, order of the trial court. We quash the appeals docketed at 706 MDA 2005 and 842 MDA 2005. Lastly, as to the appeal docketed at 627 MDA 2006, we affirm the order entered on March 9, 2006.

¶ 3 The parties to this matter suffer no love lost and have engaged in multiple paths of litigation over the years. We will recite the relevant background provided by the trial court, and we will supplement that background as needed.

> ... [Pennsy] is currently and has been in possession of a parcel of real property located in Lower Swatara Township, Dauphin County, know[n] as the Fiddler's Elbow Quarry (hereinafter "Quarry"), since approximately August 15, 1995, when the Robert M. Mumma II Grantor Retained Annuity Trust (hereinafter "GRAT") as lessor executed a Quarry Lease granting [Pennsy] possession. Since 1995, [Pennsy] has made monthly rent and royalty payments to GRAT or as otherwise directed by [Mumma]. The term of the Quarry Lease was for ten years with the potential for two consecutive five year renewal terms. [Pennsy] gave timely written notice of the first five year renewal.
>
> The Quarry Lease also acknowledged a further written agreement between the GRAT and [Kimbob] whereby Kimbob was granted a conditional license (hereinafter "Kimbob License") to continue to use a portion of the Quarry identified as the "Kimbob Parcel." The Quarry Lease further provided that the Kimbob License would terminate if the GRAT did not file a subdivision plan for the Kimbob Parcel within 18 months after the beginning date of the Quarry [L]ease, or if the GRAT did not diligently pursue a subdivision plan for the Kimbob Parcel.
>
> An arbitration provision in the Quarry Lease states that any disputes in law or equity related to the lease or any other transaction document must be resolved by arbitration. The parties do not agree, however, as to whether [Pennsy] is, in fact, the entity which leased the land nor do they agree as to whether the Kimbob License has automatically terminated or if the Quarry Lease has terminated.
>
> At the Quarry, [Pennsy] uses licensed blasters to detonate explosive charges to blast rock which is produced for use in construction projects. [Pennsy's] blasters are required by law to ensure that all areas within 50 feet of the blasting area are vacated when explosives are being loaded and that all areas within 500 feet are vacated as soon as the blaster first begins to "wire the shot" through detonation or the sounding of the "all clear" signal.
>
> Defendants are constructing a concrete plant on the Kimbob Parcel approximately 390 feet from [Pennsy's] current blasting site. The supervisor of the Quarry testified that they have continued to vacate the vicinity and notify Defendants at the Kimbob Parcel of any impending blasts when required to do so.

Trial Court Opinion, 6/7/05, at 1–3 (footnote omitted).

> On February 8, 2005, [Pennsy] filed a complaint, a petition for special injunction, and a petition for preliminary injunction.[3,4] On March 4, 2005, [Kim-

---

**3.** In the complaint, Pennsy included a trespass count, a nuisance count, and a count in which they requested a special injunction and a preliminary injunction. Both in its count for injunctive relief and in its petitions for the same, Pennsy sought a court order which,

*inter alia,* would enjoin the Defendants from trespassing on the Quarry.

**4.** On February 10, 2005, the trial court issued an order denying Pennsy's Petition for Special Injunction.

bob] and [McDermitt] filed preliminary objections to [Pennsy's] complaint and petition for preliminary injunction. On March 21, 2005, [Mumma] filed preliminary objections. On March 29, 2005, [the trial court] conducted a hearing on [Pennsy's] request for a preliminary injunction.

Trial Court Opinion, 6/7/05, at 1.

¶ 4 On April 18, 2005, the trial court entered an order in which it purported to grant, in part, Pennsy's request for a preliminary injunction. The court specifically ordered the following:

> ... [A]ny patron of the Kimbob site must remain at least 500 feet away from of [sic] an impending blast by [Pennsy]. Furthermore, [Pennsy] shall continue to notify any patrons located within 500 feet of an imminent blast to vacate the premises.

Trial Court Order, 4/18/05. The following day, the court entered another order, which states:

> ... [U]pon consideration of the Preliminary Objections filed by Defendants to [Pennsy's] Petition for Special Injunction and for Preliminary Injunction, said Objections are hereby **GRANTED**. The parties are instructed to proceed in arbitration to determine their rights pursuant to the Quarry Lease.

Trial Court Order, 4/19/05.

¶ 5 We are compelled to pause at this point to express our confusion regarding the April 19, 2005, order. First, Kimbob and McDermitt filed preliminary objections to Pennsy's **complaint,** not to Pennsy's petitions for injunctive relief. Similarly, Mumma filed separate preliminary objections to Pennsy's **complaint,** not to Pennsy's petitions for injunctive relief.

¶ 6 Secondly, while the order simply grants "Defendants" objections, the Defendants raised a number of preliminary objections. Kimbob and McDermitt filed two sets of preliminary objections. In their initial set of objections, these defendants first raised an objection under Pa.R.C.P. 1028(a)(6) in which they argued that the court should dismiss Pennsy's complaint because the Quarry Lease requires the matter to be arbitrated. Kimbob and McDermitt also claimed that the complaint should be dismissed because they were not properly served with original process, *see* Pa.R.C.P. 1028(b)(1), and because an indispensable party had not been joined to the action, *see* Pa.R.C.P. 1028(a)(5). In their second set of preliminary objections, Kimbob and McDermitt renewed their objections under Rules 1028(a)(5) and (6). Notably, at no point did these defendants expressly ask the court to direct the parties to arbitration. For his part, Mumma filed a separate set of preliminary objections in which he raised objections and requested that the court dismiss Pennsy's complaint pursuant to Rules 1028(a)(1), 1028(a)(5), and 1032(b). Mumma did not assert that the Quarry Lease requires the matter to be arbitrated, nor, for that matter, did he request that the court direct the parties to arbitrate the matter.

¶ 7 Despite the fact that the Defendants merely asked that the trial court dismiss Pennsy's complaint, it is evident that the court inferred from Kimbob and McDermitt's preliminary objections that those defendants were asserting the existence of an agreement to arbitrate and, thus, were requesting that the dispute be resolved by an arbitrator. Because Kimbob and McDermitt raised a preliminary objection under Pa.R.C.P. 1028(a)(6), the trial court's inference was reasonable given that Pa.R.C.P. 1028(a)(6) is a vehicle by which a party can assert an agreement to arbitrate. *See Note* to Pa.R.C.P. 1028(a)(6) ("An agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S.[A.] § 7304, or the common law, 42 Pa.C.S.[A.]

§ 7342(a).").[5] Lastly, because the parties and the trial court seem to assume that the court merely granted the preliminary objection regarding the agreement to arbitrate, for purposes of the appeals currently before us, we will make the same assumption.

¶ 8 Having said that, we move on with our summary of the background underlying this matter. On April 22, 2005, Pennsy timely filed a Notice of Appeal in which it gave notice that it would be appealing the trial court's April 18, 2005, order. On April 26, 2005, Pennsy timely filed a Notice of Appeal in which it gave notice that it would be appealing the trial court's April 19, 2005, order. Pursuant to Pa.R.A.P. 1925(b), the trial court directed Pennsy to file a concise statement of matters complained of on appeal, and Pennsy timely complied. Mumma followed up on May 18, 2005, by filing a Notice of Cross Appeal in which he gave notice that he was cross-appealing the trial court's orders of April 18 and 19, 2005. He too was directed to file a concise statement of matters complained of on appeal, and he timely filed such a statement. On June 7, 2005, the trial court issued an opinion pursuant to Pa.R.A.P.1925(a) addressing the parties'

issues as to the court's April 18 and 19, 2005, orders.

¶ 9 As to what followed the filing of the parties' Notices of Appeal from the April 18 and 19, 2005, orders, the trial court stated:

On June 6, 2005, [Pennsy] filed a Petition to find Defendants in contempt, to sanction Defendants and to enter judgment, alleging, *inter alia*, that Defendants refused to proceed to arbitration despite [Pennsy's] demand in violation of the [trial court's] April 19, 2005 Order. A hearing held on Plaintiff's Petition was convened on October 4, 2005 and completed on October 17, 2005. On October 12, 2005, a Motion to Recognize Arbitrator was filed by Defendants, [McDermitt] and [Kimbob], which selected Thomas Scott, Esquire, as their arbitrator. In that Motion, those Defendants further averred that they would proceed in arbitration in the event that the Superior Court denied the appeals of [Pennsy]. By Order dated December 13, 2005, [the trial court] found Defendants in contempt of [its] April 19, 2005 Order, for failing to proceed to arbitration, but [the court] allowed Defendants to purge themselves of their contempt if

---

**5.** The arbitration provision of the Quarry Lease states, *inter alia*, that the parties "waive any and all claims and issues related to statutory or common law arbitration...." Pennsy's Complaint, Exhibit A, Quarry Lease at Article 21. Despite this language, because the parties did not expressly call for the application of statutory arbitration, it would appear that the agreement calls for common law arbitration. *See generally Lowther v. Roxborough Memorial Hospital*, 738 A.2d 480, 483–84 (Pa.Super.1999) (discussing common law and statutory arbitration and stating, *inter alia*, "Pennsylvania law makes clear that, absent an express statement in the arbitration agreement, or a subsequent express or implied agreement by the parties, which calls for the application of [statutory arbitration], an agreement to arbitrate is conclusively pre-

sumed to be at common law and subject to the provisions of ... 42 Pa.C.S.A. §§ 7341, 7342").

Furthermore, while the April 19, 2005, order did not state whether the court intended to dismiss Pennsy's complaint, as will be discussed below, subsequent to entering the April 19, 2005, order, the trial court found the Defendants in contempt of this order, thus indicating that the court did not dismiss Pennsy's complaint and, therefore, retained jurisdiction over the matter. Such action is supported by the law. *See generally Schantz v. Dodgeland*, 830 A.2d 1265, 1266–67 (Pa.Super.2003) (discussing the effect of an order directing parties to arbitrate matters raised in a complaint and stating, *inter alia*, that it is improper for a court to dismiss a complaint after the court refers a matter to arbitration).

they named an arbitrator within 5 days and proceeded to arbitration within 30 days....

A hearing to determine if Defendants had purged themselves of contempt, if any, was held on January 31, 2006. On March 8, 2006, [the trial court] found that Defendants had not purged themselves of contempt and sanctioned Defendants by ordering their payment of [Pennsy's] attorney fees and related costs incurred in the filing of [Pennsy's] Petition for Contempt and in related proceedings. On March 20, 2006, Defendants filed a motion for post-trial relief requesting a new trial on the question of their alleged purge of themselves from contempt and the [trial court's] imposition of sanctions, which was denied on March 21, 2006....

Trial Court Opinion, 5/26/06, at 2–3 (footnote omitted).

¶ 10 On April 6, 2006, the Defendants filed a Notice of Appeal in which they gave notice that they were appealing the trial court's order entered on March 9, 2006, but dated March 8, 2006. On April 10, 2006, the trial court directed the Defendants to file a concise statement of matters complained of on appeal. The following day, the Defendants filed another Notice of Appeal; this time the Defendants gave notice that they were appealing the trial court's March 21, 2006, order.[6] On April 24, 2006, the Defendants filed a 1925(b) statement.

¶ 11 The trial court then filed another opinion pursuant to Pa.R.A.P.1925(a). In this opinion, the trial court highlighted that the Defendant's 1925(b) statement is over seven pages long and contains fifteen

issues. The court characterized the 1925(b) statement in the following manner:

Here, Defendants' Statement is not concise and is too vague for the [c]ourt to render a thorough legal analysis to the issues raised therein, some of which are not germane to the Order from which Defendants have taken their appeal and, in fact, relate to other pending appeals in the Superior Court. Thus, Defendants' issues should be deemed waived.

Trial Court Opinion, 5/26/06, at 4. The court nevertheless went on to state that, in its view, the Defendants were properly found in contempt and sanctioned for failing to proceed to arbitration. The court rejected the Defendants' assertion that their conditional naming of an arbitrator pending the outcome of Pennsy's and Mumma's original appeals was sufficient to purge the Defendants of contempt. The court stated, *inter alia:*

... [B]ecause all the requests for stay made by [Pennsy] and Defendants had been denied by both [the trial court] and the Superior Court,[7] Defendants['] conditional selection of an arbitrator was insufficient to purge them of their contempt and would only cause further in delay of arbitration.

Trial Court Opinion, 5/26/06, at 4.

### 691 MDA 2005

¶ 12 We will begin our analysis by addressing Pennsy's appeal docketed in this Court at 691 MDA 2005. This appeal concerns the trial court's order entered on April 18, 2005. Again, this order purported to grant, in part, Pennsy's request for a preliminary injunction. However, this or-

**6.** As mentioned above, this Court *sua sponte* dismissed the Defendants' appeal from the March 21, 2006, order.

**7.** This Court entered a *per curiam* order on August 12, 2005, in which the Court denied

Pennsy's Application for Stay. The Court also denied Mumma's Application for Supersedeas in a *per curiam* order entered on October 21, 2005.

der implicitly denied Pennsy's request that the Defendants be enjoined from trespassing on the Quarry. The Rules of Appellate Procedure allow for the immediate appeal of such an order. *See* Pa.R.A.P. 311(a)(4).

¶ 13 Our Supreme Court has described an appellate court's review of a trial court's order refusing or granting a preliminary injunction and the general law in this area as follows:

As an initial matter, we restate here that, in general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. We have explained that this standard of review is to be applied within the realm of preliminary injunctions as follows:

[W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:

It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

Thus, in general, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" support the trial court's disposition of the preliminary injunction request.

In ruling on a preliminary injunction request, a trial court has "apparently reasonable grounds" for its denial of relief where it properly finds that any one of the following "essential prerequisites" for a preliminary injunction is not satisfied. First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995, 1000–01 (2003) (citations and footnotes omitted).

¶ 14 In its brief to this Court,[8] Pennsy presents two arguments as to why it believes that the trial court erred in failing to grant its request for a preliminary injunction. Pennsy's first argument begins with its assertion that, per the Quarry Lease, it has exclusive rights to the possession of the Quarry. Based upon this premise, Pennsy contends that the Defendants infringed upon its right to quietly enjoy the Quarry when they entered the Quarry and began building the concrete plant. According to Pennsy, this Court consistently has "held that a party's loss of its right to exclude others from its property constitutes immediate and irreparable harm that justifies issuing a preliminary injunction." Pennsy's Brief at 15. Pennsy insists that the trial court missed the mark in reasoning that no evidence was presented that harm would be done to Pennsy or Pennsy's property if no injunction was granted.

¶ 15 Even if a trespass onto property constitutes an immediate and irreparable harm for purposes of determining whether a preliminary injunction is necessary, Pennsy's first argument is critically flawed. Pennsy's assertion that the Defendants are causing it harm by trespassing on the Quarry presumes that Pennsy has demonstrated that its right to relief is clear. In other words, in order for Pennsy's first argument to stand, this Court would have to assume that Pennsy has established that it is likely to prevail on the merits of its trespass and nuisance counts. Based upon the record currently before us, we cannot make such an assumption.

¶ 16 Whether the Defendants are trespassing on the Quarry turns on yet-to-be-determined legal and factual findings regarding the Quarry Lease. For instance, in order for Pennsy to be able to bring a meritorious trespass claim against the Defendants, it has to prove, *inter alia,* that it currently is a tenant under to the Quarry Lease and, thus, has the authority to eject trespassers from the Quarry. As the trial court pointed out:

> The parties do not agree ... as to whether [Pennsy] is, in fact, the entity which leased the land nor do they agree as to whether the Kimbob License has automatically terminated or if the Quarry Lease has terminated.

Trial Court Opinion, 6/7/05, at 2. The record reveals that these are not the only areas upon which the parties disagree when it comes to the Quarry Lease. Consequently, as things currently stand, the merits of Pennsy's claims of trespass and nuisance are anything but clear.

¶ 17 Consistent with the direction provided to us by our Supreme Court, we refuse to inquire further into the merits of Pennsy's claims. Instead, after an examination of the record, we find that "apparently reasonable grounds" support the trial court's disposition of Pennsy's request for a preliminary injunction.[9] We, there-

**8.** We note that we agree with Mumma that Pennsy violated Pa.R.A.P. 2117(b) by including argument in its Statement of the Case. While we do not condone such a violation, we decline Mumma's invitation to dismiss Pennsy's appeals on this ground because the violation does not hamper our review. *See Commonwealth v. Stafford,* 749 A.2d 489, 493 (Pa.Super.2000).

**9.** Due to our determination in this regard, we need not consider Pennsy's other argument concerning the propriety of the trial court's decision to refuse Pennsy's request for a preliminary injunction. *Cf. Summit Towne Centre, Inc.,* 828 A.2d at 1001 ("In ruling on a preliminary injunction request, a trial court has 'apparently reasonable grounds' for its denial of relief where it properly finds that any **one** of the following "essential prerequisites" for a preliminary injunction is not satisfied.... Fourth, the party seeking an injunction must show that ... its right to relief is clear, ... or, in other words, must show that

fore, affirm the trial court's April 18, 2005, order.

## 706 MDA 2005

█ ¶ 18 Next, we turn to the appeal docketed in this Court at 706 MDA 2005. This appeal concerns Pennsy's challenge to the trial court's April 19, 2005, order. That order granted the Defendants' preliminary objections and instructed the parties to proceed to arbitration in order to determine their rights pursuant to the Quarry Lease. In its brief to this Court, Pennsy claims that the trial court erred in referring this matter to arbitration. Before we can address the merits of the claim, we must first determine whether we have jurisdiction to entertain this appeal.[10]

█ ¶ 19 In its Statement of Jurisdiction, Pennsy asserts that this Court has jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 742.[11] Pennsy's Statement of Jurisdiction overlooks the fact that this Court repeatedly has held that an order directing a matter to arbitration is not a final, appealable order but, rather, is an interlocutory order. *See, e.g., Schantz,* 830 A.2d at 1266. Some interlocutory orders are appealable as of right, *see* Pa.R.A.P. 311; however, the order in question does not qualify as such an order. Nor, for that matter, is the April 19th order an appealable collateral order. *See* Pa.R.A.P. 313. Determining whether the Quarry Lease requires the parties to arbitrate this matter does not involve a right "too important to be denied review," *see* Pa.R.A.P. 313(a), because the parties' rights and obligations under this contract only impact the parties to this litigation. *See Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1213–14 (1999) ("For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties.").[12]

¶ 20 For these reasons, we quash the appeal docketed at 706 MDA 2005.

## 842 MDA 2005

¶ 21 As mentioned above, in a single Notice of Cross Appeal, Mumma gave notice that he too was appealing from the trial court's April 18 and 19, 2005, orders.[13] This appeal is docketed in this Court at

---

it is likely to prevail on the merits ....") (emphasis added). We also note that we are aware that our analysis differs from that of the trial court in that the trial court did not specifically find that Pennsy failed to establish the fourth prong of the test for determining whether a preliminary injunction is proper. This Court can affirm the trial court's decision on any valid basis. *See Wilson v. Transport Ins. Co.,* 889 A.2d 563, 577 n. 4 (Pa.Super.2005) ("[W]e can affirm the trial court's decision on any valid basis, as long as the court came to the correct result, which in this case was to deny Appellant relief.").

**10.** This Court may raise matters regarding its jurisdiction *sua sponte. See Tohan v. Owens–Corning Fiberglas Corp.,* 696 A.2d 1195, 1198 (Pa.Super.1997).

**11.** Save certain exceptions that do not apply here, Section 742 grants this Court "exclusive appellate jurisdiction of all appeals from **final orders** of the courts of common pleas...." 42 Pa.C.S.A. § 742 (emphasis added). Pennsylvania Rule of Appellate Procedure 341(b) de-

fines "final order" as an order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule. *See* Pa.R.A.P. 341(b).

**12.** We recognize that the test for determining whether an order qualifies as a collateral order contains three prongs; however, because we have determined that the April 19, 2005, order does not meet the importance prong of this test, we need not consider the two remaining prongs. *See Jacksonian v. Temple University Health System Foundation et al.,* 862 A.2d 1275, 1282 (Pa.Super.2004) (stating that "[b]ecause an order must satisfy all three prongs of the rule to qualify as a collateral order, we do not need to address the third prong of the collateral order rule") (citation omitted).

**13.** As a general rule, it is not wise to file a single appeal from multiple orders. *See K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863, 869 (2003)

842 MDA 2005. In his cross-appeal, Mumma raises two issues.

¶ 22 As our discussion under 706 MDA 2005 demonstrates, we cannot entertain the merits of any claim with regard to the April 19, 2005, order of the trial court because that order directed the parties to arbitrate this matter. Mumma fails to make clear with which order his first issue is associated. Moreover, under this issue, Mumma takes exception to two statements made by the trial court in the opinion the court issued on June 7, 2005. Thus, it appears that Mumma is challenging the trial court's opinion, not any particular order.[14] In his second issue, Mumma questions whether, before the trial court ordered the parties to arbitration, the court should have determined whether Pennsy was the entity that signed the Quarry lease and/or whether the Quarry Lease is void *ab initio.* This issue is most closely associated with the April 19, 2005, order. Accordingly, we quash this appeal.

### 627 MDA 2006

¶ 23 We will begin our discussion regarding the above-docketed appeal by supplementing the previously provided background. In a letter dated April 27, 2005, Pennsy made a demand for arbitration on, among others, the Defendants. Then, on June 6, 2005, Pennsy filed in the trial court a "Petition to Confirm Defendants' Default in Arbitration, To Find Defendants in Contempt, To Sanction Defendants and To Enter Judgment." In this Petition, Pennsy asserted its position that the Defendants failed to cooperate in the arbitration process as ordered. According to Pennsy, the Defendants' failure to cooperate in this regard amounted to contempt of the trial court's April 19, 2005, order.

¶ 24 The trial court held a hearing on the petition on October 4, 2005. This hearing was completed on October 17, 2005. In the meantime, on October 12, 2005, Kimbob and McDermitt filed a Motion to Recognize Arbitrator. The motion provided as follows:

In the event the Superior Court denies the appeal of [Pennsy] and determines that [the trial court] had the authority to enter its April 19, 2005, order instructing the parties to proceed in arbitration, the above named defendants named as their arbitrator: ... Thomas Scott, Esquire[.]

Motion to Recognize Arbitrator, 10/12/05.

¶ 25 In an order entered on December 14, 2005, the trial court found the Defendants in contempt of the court's April 19th order. The December 14, 2005, order allowed the Defendants to purge themselves of contempt "if, within five (5) days of the date of this Order, they name an arbitrator and proceed to arbitration within thirty (30) days of the date of this Order." Trial Court Order, 12/14/05, at ¶ 2. The order also called for a hearing to be held on January 17, 2006, at which time the issue of appropriate sanctions to be imposed upon the Defendants would be decided if, indeed, the Defendants failed to purge their contempt. However, on January 13, 2006, the court issued an order continuing that hearing until January 31, 2006.

¶ 26 A hearing was held on January 31, 2006; however, only counsel for Pennsy attended. In short, Pennsy took the position that the Defendants failed to purge their contempt. In an order dated March

("[I]t has been observed that 'a single appeal is incapable of bringing on for review more than one final order, judgment or decree[.]' ") (quoting *General Electric Credit Corp. v. Aetna Casualty & Surety Co.,* 437 Pa. 463, 263 A.2d 448, 452 (1970)).

**14.** As an aside, the trial court made the two complained-of statements in relating the background underlying this matter. Thus, these statements amount to nothing more than *obiter dicta.*

8, 2006, but entered on March 9, 2006, the court ruled that the Defendants failed to purge their contempt "by conditionally naming Tom Scott, Esquire, as their arbitrator...." Trial Court Order, 3/9/06, at ¶ 1. The court also imposed sanctions upon the Defendants, jointly and severally, in the amount of $24,620.50. On March 20, 2006, the Defendants filed a Motion for Post Trial Relief, which the trial court denied the following day.

¶ 27 As we mentioned previously, on April 6, 2006, the Defendants filed a Notice of Appeal in which they gave notice that they were appealing the trial court's order entered on March 9, 2006. On April 10, 2006, the trial court directed the Defendants to file a concise statement of matters complained of on appeal. The following day, the Defendants filed another Notice of Appeal; this time, the Defendants gave notice that they were appealing the trial court's March 21, 2006, order, which denied their Motion for Post Trial Relief. On April 24, 2006, the Defendants timely filed a 1925(b) statement, which the trial court later found to be, *inter alia,* too vague and verbose to allow for review.

■ ¶ 28 As an initial matter, we point out that "civil contempt orders imposing sanctions generally constitute final, appealable orders." *See Stahl et al. v. Redcay et al.,* 897 A.2d 478, 487 (Pa.Super.2006).

Here, in the order entered on March 9, 2006, the trial court found that the Defendants failed to purge their contempt and levied monetary sanctions against them. Thus, the March 9th order constituted a final and appealable order, and the Defendants timely and properly appealed from this order.[15]

¶ 29 In their brief to this Court, the Defendants present the following issues for our consideration:

1. Was the Statement of Matters Complained of and Intended to be Argued on Appeal filed by [the Defendants] so vague and lengthy as to amount to no statement at all, resulting in waiver of all issues?

2. Was it an error of law and an abuse of discretion for the lower court to impose sanctions on corporate defendants Kimbob and McDermitt following a hearing of which they were given no notice?

3. Did the lower court commit an error of law and abuse its discretion when it imposed monetary sanctions on [the Defendants] based upon actions they took in October of 2005 without acknowledging or considering additional actions taken subsequent to October of 2005 that were known to the court, and to counsel for [Pennsy], that clearly purged them of any contempt?

---

**15.** As stated above, the Defendants attempted to appeal the trial court's order denying their Motion for Post Trial Relief; this Court quashed that appeal. We point out that, given that it has been held that a contempt order which contains sanctions constitutes a final and immediately appealable order, it was unnecessary and inappropriate for the Defendants to file post-trial motions. We note, however, that, in their Motion for Post Trial Relief, the Defendants stated, in the alternative, that "should [the trial court] determine that the [March 9, 2005,] Order is not amenable to review *via* post trial motions, then this motion should be considered as a request for reconsideration of [that] Order." Defendants'

Motion for Post Trial Relief, 3/20/06, at 9. The court had the authority to entertain and deny the Defendants' motion if it treated it as a motion for reconsideration. *See* Pa.R.A.P. 1701(b)(3). However, regardless of whether the trial court inappropriately treated the motion as a post-trial motion or properly treated the motion as a request for reconsideration, the Defendants could not challenge the trial court's decisions by appealing the court's order denying their Motion for Post Trial Relief. *See Fortune/Forsythe v. Fortune,* 352 Pa.Super. 547, 508 A.2d 1205, 1208 (1986) (stating that a "trial court's refusal to reconsider [an] order is not final and reviewable").

4. Was it an error of law for the court to impose sanctions upon [the Defendants] for failure to submit a dispute to contractual arbitration when none of the Defendants were parties to the contract that contained an arbitration clause?

5. Did the lower court abuse its discretion and commit an error of law when it awarded legal fees to [Pennsy's] counsel based upon an affidavit of services rendered that was submitted to the court after the hearing where [the Defendants] were not afforded any opportunity to challenge the services or the fees?

Defendants' Brief at 7 (suggested answers omitted).

¶ 30 The Defendants first contend that contrary to the trial court's assertion, their 1925(b) statement was "neither vague or verbose." Defendants' Brief at 20. Consistent with this contention, the Defendants maintain that this Court should not find that they waived all issues on appeal for failing to comply with the trial court's 1925(b) order. Pennsy takes no stance on this issue.

¶ 31 We agree with the Defendants that we should not find that they have waived all issues on appeal based upon their 1925(b) statement. The 1925(b) statement is over seven pages in length; however, the majority of the statement is taken up by the Defendants' suggested answers to the issues enumerated in the statement. While these suggested answers are unnecessary and superfluous, they do not take away from the clarity of the issues the Defendants raised in the statement. Moreover, a reading of the statement reveals that the issues raised therein are fairly straightforward and, thus, are not too vague to preclude review. We, there-

fore, decline the trial court's invitation to find that the Defendants waived all issues on appeal. *See McGavitt et al. v. Guttman Realty Co. et al.*, 909 A.2d 1, 3–4 (Pa.Super.2006).

¶ 32 Next, the Defendants claim that Kimbob and McDermitt's rights to due process were violated because these corporate defendants were not given proper notice that the sanctions hearing originally scheduled for January 13, 2006, was continued until January 31, 2006. The law in this area can be stated, in brief, as follows:

It is settled that notice is a fundamental requirement of due process, for a proceeding to be respected as final. Notice is deemed adequate when it is reasonably calculated to inform a party of the pending action and provides the party an opportunity to present objections to the action.

*See Wilkes et al. v. Phoenix Home Life Mut. Ins. Co.*, 587 Pa. 590, 902 A.2d 366, 383 (2006) (citations omitted).

¶ 33 In an order entered on December 21, 2005, the trial court granted Kimbob and McDermitt's counsel's request to withdraw as counsel. As such, when the trial court issued its January 13, 2006, order continuing the sanctions hearing to January 31, 2006, Kimbob and McDermitt were not represented by counsel. The distribution list for the January 13th order, included, among others, Mumma, who is the president of both Kimbob and McDermitt and a director of both of those corporations.

¶ 34 Given that Kimbob and McDermitt were unrepresented on January 13, 2006, and that the January 13th order was sent to Mumma,[16] who is both

---

**16.** In their brief, the Defendants also complain in passing that the notice regarding the continuation of the sanctions hearing was "possibly also defective" as to Mumma be-

cause the notice was sent to Mumma's secondary residence in Pennsylvania rather than to his primary residence in Florida. Defen-

the president and a director of the corporate defendants, we conclude that he January 13, 2006, order was reasonably calculated to inform the corporate defendants of the January 31, 2006, hearing. Thus, this order did not deprive Kimbob and McDermitt of an opportunity to present their objections at the hearing. We also note that the Defendants' current claim regarding notice is contrary to the position they took in their Motion for Post Trial Relief. In the motion, the Defendants made no mention of not receiving adequate notice. Rather, the Defendants stated, "Due to an internal failure of communication among defendants, no defendant nor representative of the defendants was present at the January 31, 2006 'hearing'...." Defendants' Motion for Post Trial Relief, 3/20/06, at 5, ¶ 10. For these reasons, we hold that this issue is meritless.

¶ 35 Under their third issue, the Defendants raise several claims. First, they argue that the trial court abused its discretion essentially by presuming that the parties received notice of the January 31, 2006, hearing. We have already determined that the notice regarding the January 31, 2006, hearing was adequate; therefore, we find no merit to this argument.

■■■ ¶ 36 The Defendants also claim that the trial court abused its discretion by considering hearsay evidence offered by Pennsy at the January 31, 2006, hearing and by failing to consider similar evidence sent to the court by the Defendants. Along the same lines, the Defendants argue that, during the January 31st hearing,

Pennsy's counsel made incomplete and inaccurate statements to the court.

¶ 37 In these claims, the Defendants are attempting to object to evidence considered by the trial court at the January 31st hearing and to statements made by Pennsy's counsel at the same hearing. The Defendants did not attend the January 31st hearing, let alone raise these issues in the trial court. Instead, they are offered for the first time on appeal. These issues, therefore, are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

■■■ ¶ 38 Under their penultimate issue, the Defendants maintain that Kimbob and McDermitt "should not be held in contempt for failing to pursue arbitration under a contract to which they were not parties." Defendants' Brief at 34. This argument merely is a poorly veiled attempt to attack the April 19, 2005, order instructing the parties to proceed in arbitration. This appeal is not the proper forum for bringing such an attack.

■■■ ¶ 39 Lastly, the Defendants insist that the trial court erred in the amount of attorneys' fees the court awarded to Pennsy. More specifically, the Defendants complain that, at the sanctions hearing, Pennsy did not present any evidence concerning the amount of attorneys' fees due to it. Rather, the court allowed Pennsy "to submit a [post-hearing] statement for attorneys' fees to the court in the form of an affidavit by an individual who was not

---

dants' Brief at 23 n. 8; Defendants' Brief at 26 ("It is questionable whether this was even good notice to Mumma since he has consistently advised [Pennsy] and the [trial court] that his residence address is [in] Florida."). While the Defendants generally claimed in their 1925(b) statement that they were deprived of an opportunity to participate in the January 31, 2006, hearing and, specifically, that Kimbob and McDermitt were not recipi-

ents of the January 13, 2006, order continuing the sanctions hearing, the 1925(b) statement is devoid of a specific contention that the notice of the continued hearing was deficient with regard to Mumma. Thus, the issue is waived. *See Baysmore v. Brownstein,* 771 A.2d 54, 56–7 (Pa.Super.2001) ("Any issues not raised in a 1925(b) statement will be deemed waived.")(quoting *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998)).

present at the hearing, rather than by means of direct testimony." Defendants' Brief at 35. According to the Defendants, "[n]one of [the Defendants] were given notice that the affidavit with respect to attorneys' fees was going to be filed with the court nor were they given any opportunity to challenge the fees submitted." Defendants' Brief at 35.

¶ 40 The primary problem with the Defendants' argument under this issue is that they would have received notice of the procedure the trial court intended to employ in deciding the amount of fees due to Pennsy had the Defendants attended the sanctions hearing. They did not. As such, they failed to object to this procedure in the lower court and, instead, chose to raise this issue for the first time on appeal. The issue, therefore, is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

¶ 41 For these reasons, we affirm the order entered on March 9, 2006.

¶ 42 As to the appeal docketed at 691 MDA 2005, the order of April 18, 2005 is affirmed. The appeals docketed at 706 MDA 2005 and 842 MDA 2005 are quashed. As to the appeal docketed at 627 MDA 2006, the order entered on March 9, 2006, is affirmed. Jurisdiction relinquished.

¶ 43 Judge BENDER concurs in the result.