J-S33002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D., MOTHER | No. 44 MDA 2017 |

Appeal from the Order Entered November 28, 2016
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s): CP-36-DP-0000280-2016

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED MAY 30, 2017**

D.D. (Mother) appeals from the order entered on November 28, 2016, in a dependency proceeding that resulted in the finding that R.D. (Child), born in December of 2014, is a dependent child and that the permanency goal is adoption. On that same date, the court entered a separate order in which it found that aggravated circumstances existed, thus, alleviating the Lancaster County Children and Youth Social Service Agency (Agency) of the necessity to make efforts toward unification. After review, we affirm the order declaring Child dependent.

Mother raises the following issues for our review:

I. Was there sufficient evidence of record to find that "aggravated circumstances[,"] as defined by 42 Pa.C.S. [§] 6302, exist against Mother?

II. If aggravated circumstances do in fact apply, did the court abuse its discretion in setting the Permanency Goal as adoption, when the Agency had no child welfare concerns for the [C]hild,

_____

[*] Retired Senior Judge assigned to the Superior Court.

and [Child] would have, but for Mother's incarceration[,] no[t] been found to be dependent?

Mother's brief at 5.

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375.  Moreover, we note that :

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determination of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law.  Accordingly, we review for an abuse of discretion.

*In re L.V.*, 127 A.3d 831, 834 (Pa. Super. 2015) (quoting *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013)).

Before we are able to address any arguments Mother asserts in her brief, we are compelled to point out that Mother's notice of appeal indicates that she is appealing from an order filed on November 28, 2016, despite the fact that two orders were entered on the trial court's docket that day, *i.e.*, the dependency order and the order finding aggravated circumstances. Notably, the notice of appeal does not indicate from which order Mother is appealing.  The order contained in Mother's brief, situated immediately following the statement of jurisdiction, is the order relating to the finding of dependency.[1]  Thus, Mother's first issue, which directly addresses the finding

---

[1] *See* Pa.R.A.P. 2115 ("Order or Other Determination in Question") ("The text of the order or other determination from which an appeal has been taken or which is otherwise sought to be reviewed shall be set forth verbatim immediately following the statement of jurisdiction.").

of aggravated circumstances, could be considered waived in that we may not address an issue relating to an order that is not under appeal. *See Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184, 1194 n.13 (Pa. Super. 2007) ("As a general rule, it is not wise to file a single appeal from multiple orders."). However, in *K.H. v. J.R.*, 826 A.2d 863 (Pa. Super. 2003), our Supreme Court stated:

> Where a party specifies a particular part of a judgment or order in their notice of appeal, appellate review may nevertheless be extended to orders not identified in the notice of appeal if the specified and unspecified orders are connected, the intention to appeal the unspecified order is apparent, and the opposing party has not suffered prejudice and has had an opportunity to brief the issues.

*Id.* at 871. Therefore, pursuant to this statement, it appears that Mother's aggravated circumstances argument could be considered even though the finding of aggravated circumstances was contained in a separate order.

Unfortunately, however, Mother has not preserved her aggravated circumstances issue because she has failed to include it in her Pa.R.A.P. 1925(b) statement of errors complained of on appeal. *See Baysmore v. Baysmore*, 771 A.2d 54, 56-57 (Pa. Super. 2001) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.")). Specifically, Mother's 1925(b) statement provides only that "[t]he Juvenile Court abused its discretion by denying Mother a plan for reunification with her child when, although subject to aggravated circumstances, there were no issues with her

- 3 -

care of the child, other than and until her incarceration." Mother's 1925(b) Statement. Accordingly, we must consider her first issue waived.

With regard to Mother's second issue, we rely on the trial court's discussion of the reasons for its determination as to the permanency goal of adoption for Child. We have reviewed the certified record, the briefs of the parties, the applicable law, and the opinion authored by the Honorable Leslie Gorbey of the Court of Common Pleas of Lancaster County, dated January 23, 2017. We conclude that Judge Gorbey's thorough opinion properly disposes of the issue raised by Mother. Thus, we adopt Judge Gorbey's opinion as our own and affirm the order appealed from on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/30/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
JUVENILE DIVISION

IN RE:

R.D., a minor,

BY: GORBEY, J.

Docket No: CP- 36-DP-0000280-2016

SUPER. CT. NO: 44 MDA 2017

## OPINION SUR APPEAL
PROCEDURAL HISTORY

R.D. ("R"), now age 2, first came to the attention of Lancaster County Court on November 7, 2016, when a Petition for Temporary Custody was filed by the Lancaster County Children and Youth Social Service Agency ("Agency"). By Order dated November 8, 2016, R was placed in the temporary custody of the Agency. R's maternal half siblings who resided with D. D. ("Mother") and N. D. ("Father") were transferred to the custody of their father. A Shelter Care hearing was postponed, and an Order modifying R's placement, on the Agency's Motion, was entered on November 9, 2016; R was placed with her paternal uncle A. D. ("Uncle") and aunt R. D. ("Aunt"), where R's paternal half-brother A. S. is also placed. Uncle and Aunt were in the process of being approved as kinship resources. A November 14, 2016 Order, after the postponed Shelter Care hearing, continued this placement in Agency care.

An adjudication/disposition hearing was held on November 28, 2016, with Mother and Father in attendance. After that hearing, on November 28, 2016, the Court entered an Order finding R to be a dependent child, and ordered that it was in the best interest of R to continue her placement with Uncle and Aunt, and a placement plan was approved. The Court also entered an Order finding Aggravated Circumstances as to Mother and Father, and directing that no efforts be made towards reunification with Mother or Father.

On December 27, 2016, Mother filed an appeal to the Pennsylvania Superior Court from the November 28, 2016 Order; this Opinion is prepared in response. Father did not appeal the decision.

## FACTUAL HISTORY

R was born on December 5, 2014, and she lived with Mother and Father, along with three half-brothers: Mother's sons B. M. (born 5/7/2008) and T. M. (born 10/18/2006) and Father's son A. S. (born 11/25/2011). (Agency Ex. 1, N.T. at 6)

This family has extensive history with the Agency. Father's first wife, L. S., has four children, including Father's son A. S. Reports to the Agency, regarding L. S., date back to 2002, including reports of drug abuse, domestic violence, and child neglect. A. S. was born in 2011 and exhibited symptoms of drug withdrawal; A. S. was discharged to the care of his maternal grandmother and lived with her until age 3. For a period after that age, A. S. lived alternately with his maternal grandmother and his mother, L. S., until March of 2016, when L. S., was incarcerated. A. S. then moved in with Father and Mother (Step-Mother of A. S.) where he remained until he was placed in the custody of Agency. (See Petition and Adjudication/Disposition Order, In re A.S., CP-36-DP-0000254-2016, attached for convenience and thoroughness)

Mother became a caretaker to her step-son, A. S. (N.T. at 18) A May, 2016 report of Mother's abuse of A. S. was deemed unfounded because it could not be substantiated. The report included the following: fingerprint-shaped bruising on A. S. by Mother, potty-training of A. S. by Mother by tying him to the toilet for hours, A. S. being washed by Mother with ice water when he soiled himself, and A. S. being forced into his bedroom for 8- to 12- hours per day by Mother. See Petition, In re A.S., CP-36-DP-0000254-2016. In July of 2016, the Agency received more reports of physical abuse of

2

A. S., including obviously-inflicted cigarette burns, bruising and abrasions. (Agency Ex. 1, N.T. 4-5, 7) On July 23, 2016, Mother asked Aunt to take custody of A. S., and the extent of A. S.'s injuries, including the cigarette burns, bruises and abrasions, became apparent. *See* Adjudication/Disposition Order, *In re A.S.*, CP-36-DP-0000254-2016. A safety plan was implemented, requiring Father's contact with A. S. to be supervised and providing no contact between Mother and A. S. *In re A.S.*, CP-36-DP-0000254-2016.

In September of 2016, the Agency filed for custody of A. S. because the concerns that prompted the safety plan had not been alleviated. *See* Petition, *In re A.S.*, CP-36-DP-0000254-2016. The report alleged that Mother, A. S.'s step-mother, bound his legs with a bedsheet in a game that she called "the mermaid game." (N.T. at 5, 17-18) The report continued, alleging that Mother fed laxatives with hot sauce to A. S. and then denied him water and confined him to the bathroom to sit on the commode for hours. (*Id.* at 5) A. S. had numerous cigarette burns in various stages of healing on his face, neck, torso, arm, and ankles. (*Id.* at 5) The report also contained information about Mother hitting A. S. with her hands and with books, and also of verbal abuse. (*Id.* at 5-6) On October 31, 2016, the Court found A. S. to be dependent, with Aggravated Circumstances found as to Father and Mother, and finding them perpetrators of the abuse of A. S. (Agency Ex. 1, N.T. at 7, 10) The Court credited the expert testimony of Cathy J. Hoshauer, M.D.; Dr Hoshauer's testimony included information that Mother was providing daily care for A. S. and her other children as a stay-at-home mother. *In re A.S.*, CP-36-DP-0000254-2016. Neither Mother nor Father attended that October 31, 2016 Dependency/Disposition regarding A. S., but they did attend the Shelter Care hearing on September 26, 2016. A. S. continued in placement with Uncle and Aunt at that time. (N.T. at 15, 16)

3

This history prompted the police to execute the November 7, 2016 search warrant to search at the home shared by this family and arrest Mother and Father. (Agency Ex. 1, N.T. at 7) Father was charged with criminal conspiracy, aggravated assault and endangering the welfare of children. (Agency Ex. 1, N.T. at 8) Mother was charged with five counts of aggravated assault, and individual counts of false imprisonment, unlawful restraint, endangering the welfare of children, terroristic threats, recklessly endangering another person, and harassment. (Agency Ex. 1, N.T. at 8) These charges relate to the injuries sustained by A. S. as a result of Mother's actions and Father's failure to act. (N.T. at 8) Mother and Father were incarcerated as a result of the charges and unable to care for R. (*Id.* at 7, 8) As a condition of bail release, Mother and Father were not to have contact with any of the four children. (*Id.* at 9)

The Pennsylvania State Police took emergency custody of R, while T. M. and B. M. were transferred to the care of their biological father, J. M. (*Id.* at 7, 8) R joined A. S. in kinship care with Uncle and Aunt (*Id.* at 4, 9, 13, 18). The Agency filed the instant Petition for Custody regarding R as a result of the abuse of A. S., as well as Mother and Father's incarceration and resulting inability to care for R. (*Id.* at 8-9, 17) The Agency's Petition includes a Motion for Finding of Aggravated Circumstances. (*Id.* at 10, 11) The Agency's Permanency Plan did not include goals of reunification of either parent with R. (*Id.* at 11)

## ISSUE

1. Whether the Court erred in finding aggravating circumstances precluding Mother from reunification with her own child where the Mother was a caregiver and step-mother to another child (her own child's half-sibling), and where the Mother has been found to be a perpetrator of physical abuse of that step-child?

4

## ANALYSIS

On appeal, Mother suggests that because she is not the biological parent of A. S. within the meaning of section 6302, her founded abuse of A. S. should not preclude her from reunification with R, her biological child.

The Juvenile Act provides that, "[i]f the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist" from clear and convincing evidence. 42 Pa.C.S. §6531(e)(2). Aggravated circumstances are present where "[t]he child is in the custody of a county agency and ... (2) [t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S. §6302.

In the matter at hand, Agency alleged the existence of aggravated circumstances as to Mother and Father, in the dependency petition requesting that R be found to be a dependent child. R's half-brother, A. S. has been the victim of extensive physical abuse by Mother, (step-mother to A. S.), and Father, and this abuse resulted in serious bodily injury and/or aggravated physical neglect. Mother and Father have been criminally charged as a result of their treatment of A. S., and are incarcerated pending trial.[1]

The Superior Court has held that, "for purposes of defining 'parent' in the context of 'aggravated circumstances,' the doctrine of *in loco parentis* is appropriately applied." *In re C.B.*, 861 A.2d 287, 297 (2004), *appeal denied* 582 Pa. 692 (2005). "The status of

---

[1] See Common Pleas Dockets numbered 36-CR-6231-2016 and 36-CR-6230-2016, respectively at Unified Judicial System of Pennsylvania.

5

*in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child." *Id.* at 296. This doctrine focuses on families "where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Another important aspect of this doctrine is 'whether the third party lived with the child and the natural parent in a family setting, irrespective of its traditional or nontraditional composition, and developed a relationship with the child as a result of the participation and acquiescence of the natural parent." *Id.* at 296, *citations omitted.*

Here, Mother assumed parental status and discharged parental duties. Mother stayed at home with the children and provided regular, daily care and nurturing for both A. S. and R because they were not school-aged while Father worked. This testimony is uncontroverted. Mother was providing regular care such that the events like the 'mermaid game,' the laxatives-and-hot-sauce feedings, and the tying-onto-the-commode happened. It was Mother who contacted Aunt in July of 2016, asking Aunt to take over the care of A. S. Mother lived with A. S. and Father in a family setting, with A. S.'s half-sister R and A. S.'s two step-brothers, with participation of Father. Mother was clearly acting *in loco parentis* as to A. S., and the Court properly considered her a parent for the purposes of the "aggravated circumstances" determination. Accordingly, because R is in the custody of the Agency and because A. S., step-child of Mother, has been the victim of serious physical abuse resulting in serious bodily injury, the existence of 'aggravated circumstances' as to Mother in the case at bar is not in doubt.

6

"If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing" unless there has been an "(A) an adjudication of dependency at which the court determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made." 42 Pa.C.S. §6351(e)(2) and (3)(ii)(A).

There is no legal mandate under the Juvenile Act that, once aggravated circumstances are found to exist, that the placement plan must provide for the child's return home; this provision gives courts a choice in deciding whether or not to provide or to continue efforts to return the children home. "Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows: (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and ... (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling." 42 Pa.C.S. §6351(b)(1) and (5).[2]

---

[2]"The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required." 42 Pa.C.S. §6351(b).

7

Here, the Court found clear and convincing evidence that allowing R to remain at home with her parents would be contrary to her welfare, safety and health, because her parents were incarcerated and also because they were founded perpetrators of sustained child abuse over a period of time as to A. S., R's half-brother. That Mother was not found to have abused or neglected R does not excuse her mistreatment of her step-child, A. S. It is in the best interests of R and A. S., as half-siblings, to be placed together in a stable and safe kinship home.

## CONCLUSION

For the reasons set out above, the Court affirms its decision that R. D. is a dependent child, and that the evidence appropriately indicates that it was in her best interest to remove her from Mother's home because of aggravated circumstances found at to Mother's because of serious physical abuse of R.'s half-brother.

BY THE COURT:

LESLIE GORBEY, JUDGE

DATED: January 23, 2017

Attest:

Copies to:

John P. Stengel, Esquire
Patricia L. Dunlevy-Williams, Esquire
Daniel H. Shertzer, Jr., Esquire
Laura McGarry, Esquire

2017 JAN 23 PM 4:40
LANCASTER COUNTY, PA
CLERK OF COURTS

8