J-S12030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.D.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.T.D., MOTHER, | |
| Appellant | No. 2326 EDA 2014 |

Appeal from the Order Entered July 17, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000679-2013, CP-51-DP-0001635-2011

BEFORE:  BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 20, 2015**

F.T.D. ("Mother") appeals from the order entered on July 17, 2014, in the Court of Common Pleas of Philadelphia County, terminating her parental rights to her son, J.D.D., born in April 2011 ("Child").[1]  We affirm.

We acknowledge the detailed factual history of this case set forth by the trial court in its opinion to this Court.  Trial Court Opinion, 9/17/14, at 1–3.  Procedurally, the Department of Human Services of Philadelphia County ("DHS") received a General Protective Services report regarding Mother and Child on July 26, 2011.  Child was adjudged dependent in August

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  The trial court also terminated the parental rights of Child's father, W.J. ("Father").  Father did not file an appeal from the order terminating his parental rights, and he is not a party to the instant appeal.

2011. After providing services to Mother for approximately twenty-eight months, DHS filed a petition to involuntarily terminate Mother's parental rights on November 26, 2013, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The trial court conducted a termination hearing on July 17, 2014. As of the termination hearing, Child had been in the care of his maternal grandfather for thirty-five months. Following the hearing, the trial court terminated Mother's parental rights to Child. This appeal followed.

Mother presents the following questions for our consideration:

1. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. § 2511(a)(2)?

3. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. § 2511(a)(5)?

4. Whether the Trial Court erred by terminating the parental rights of [Mother], under 23 Pa.C.S.A. § 2511(a)(8)?

5. Whether the Trial Court erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Mother's] parental rights best serve the child's developmental, physical and emotional needs and welfare?

Mother's Brief at 5.[2]

_____

[2] We note that Mother's brief violates Pa.R.A.P. 2119(a) and 2119(c), respectively, in that the argument section (1) is not "divided into as many parts as there are questions to be argued" and (2) does not "set forth . . . a reference to the place in the record where the matter referred to appears." Because these violations do not hamper our review, we shall address

*(Footnote Continued Next Page)*

We review Mother's issues according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa.2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re R.I.S.*, 614 Pa. 275[,] 36 A.3d 567, 572 (Pa.2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa.1994).

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012)).

_____
*(Footnote Continued)*

Mother's issues. *Accord Pennsy Supply, Inc. v. Mumma*, 921 A.2d 1184 (Pa. Super. 2007) (involving violation of Pa.R.A.P. 2117(b)).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re I.E.P.*, 87 A.3d at 344 (quoting *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511)).

Mother's first four issues challenge the trial court's analysis pursuant to subsections 2511(a)(1), (2), (5), and (8) of the Adoption Code. Mother's Brief at 9–11; Trial Court Opinion, 9/17/14, at 4, 7, 9, 10. This Court must agree with only one subsection of 23 Pa.C.S. § 2511(a), in addition to subsection 2511(b), in order to affirm the termination of parental rights. *In re I.E.P.*, 83 A.3d at 344. We shall review the termination order pursuant to section 2511(a)(8) and (b), which provide as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

- 4 -

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

This Court has stated:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re I.E.P.*, 87 A.3d at 356 (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275–1276 (Pa. Super. 2003); 23 Pa.C.S. § 2511(a)(8)).

"Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court."  *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003).  Once the twelve-month period has been established, the court must next determine whether the

conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic period. ***Id.*** The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009). Furthermore, we have acknowledged that:

> the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

***In re I.E.P.***, 87 A.3d at 345–346 (quoting ***In re J.F.M.***, 71 A.3d 989, 997 (Pa. Super. 2013)).

With respect to the "needs and welfare" analysis pertinent to section 2511(a)(8) and (b), we have observed that:

> initially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best

interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of the child, as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re I.E.P.*, 87 A.3d at 346 (quoting *In re Adoption of C.L.G.*, 956 A.2d 999, 1008–1009 (Pa. Super. 2008) (*en banc*) (citations omitted)). Finally, "[s]ection 2511(a)(8) does not require an evaluation of the remedial efforts of either the parent or DHS." *In re B.C.*, 36 A.3d 601, 611 (Pa. Super. 2012) (citing *C.L.G.*, 956 A.2d at 1007).

The trial court conducted a section 2511(a)(8) analysis as follows:

> DHS met its burden by clear and convincing evidence since the Child has continuously been out of Mother's care for thirty-five months (N.T. 7/17/14, pg. 10). The conditions leading to the placement still exist (N.T. 7/17/14, pgs 35, 54–56), despite DHS['s] good faith efforts to make services available (N.T. 7/17/14, pg. 65). Termination of Mother's parental rights would best serve the needs and welfare of the Child (N.T. 7/17/14, pgs. 63, 67–68).

Trial Court Opinion, 9/17/14, at 10.

Upon review, we conclude that the record supports the trial court's findings, and its legal conclusion is without error. DHS placed Child in care with maternal grandfather in August 2011. N.T., 7/17/14, at 68. Thus, as of the termination hearing on July 17, 2014, Child "has been removed from parental care for 12 months or more from the date of removal." 23 Pa.C.S. § 2511(a)(8). Mother's mental health issues seriously impaired her parental abilities, caused the foster care case manager concern, and led to Child's

placement with maternal grandfather. N.T., 7/17/14, at 15–20, 35. DHS developed a set of family service plan ("FSP") objectives and goals for Mother on November 21, 2011, which included a mental health evaluation, following all recommendations, housing, stable employment, visitation, and a parenting capacity evaluation. *Id.* at 14, 18. Additionally, the trial court ordered that Mother undergo a psychiatric evaluation, but she never complied. *Id.* at 22–23, 55–56, 58–60. DHS added objectives on March 11, 2013, which included continued therapy, a psychiatric evaluation, signed releases or verification of compliance with services, supervised visitation, and evidence of employment. *Id.* at 54. Mother completed parenting and anger management classes. *Id.* at 118. However, as of the filing of the termination petition, Mother had not completed other FSP objectives and goals—most notably mental health treatment or a psychiatric evaluation. *Id.* at 20–25, 30–31, 55–60, 65–67. Thus, "the conditions which led to the removal or placement of the child continue to exist." 23 Pa.C.S. § 2511(a)(8).

Finally, DHS provided myriad services to Mother, but she was difficult, disrespectful, uncooperative, and noncompliant with her objectives and goals, although she did visit with Child and interacted appropriately. N.T., 7/17/14, at 26–28, 56–57, 65–67. On the other hand, Child has been in the care of his maternal grandfather since he was four months old, and "[h]e has everything he needs." *Id.* at 68. Moreover, Child does not have a bond

with Mother. *Id.* at 29, 61, 69. Thus, termination of Mother's parental rights would not cause irreparable harm to Child and would best serve the needs and welfare of Child. *Id.* at 29, 65.

Mother's final issue challenges the trial court's analysis pursuant to section 2511(b). Mother's Brief at 12. With respect to subsection 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super.2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762–[7]63 (Pa.Super.2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at [7]63.

*In re I.E.P.*, 87 A.3d at 346 (quoting *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010)). Moreover, it is well settled that, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re I.E.P.*, 87 A.3d at 347–348 (quoting *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted)). In this matter, the foster

care case manager and the DHS social services manager testified that Mother and Child lack any significant bond. N.T., 7/17/14, at 29, 61, 69.

The trial court summarized its section 2511(b) analysis as follows:

> The record established that the Child will not suffer any irreparable harm by terminating Mother's parental rights. (N.T. 7/17/14, pg. 65). Foster parents provide for all of the Child's needs (N.T. 7/17/14, pgs. 68, 75), and Mother and Child have not developed a parent/child bond (N.T. 7/17/14, pgs. 29, 68–69) since the Child [has] been with his foster parents for most of his life. The record contains overwhelming evidence that Mother has made little attempt to cultivate a bond with Child. Mother's visits have been inconsistent and for a period of time Mother did not visit (N.T. 7/17/14, pgs. 26–28, 40–41). Conversely, the Child has a parent/child bond with the foster parents (N.T. 7/17/14, pgs. 68) and would suffer harm if he is removed (N.T. 7/17/14, pgs. 67–68). The court determined that the testimonies of the DHS witnesses were credible.

Trial Court Opinion, 9/17/14, at 11.

Upon review, we conclude that the record supports the trial court's findings, and its legal conclusion is without error. Child has spent almost his entire life in the care of his maternal grandfather. During Child's thirty-five months in placement, Mother inconsistently complied with her visitation objective and, at times, did not visit Child. N.T., 7/17/14, at 28–29, 41. No parent-child bond exists because Child looks to Mother as a "visitation resource," but to his maternal grandfather as his parent. *Id.* at 29, 74. On the other hand, maternal grandfather and his female companion have a parent-child bond and are meeting Child's developmental, physical, and emotional needs. *Id.* at 29, 68, 74–75, 89–90. Thus, Child would not

"suffer any irreparable harm by terminating [M]other's parental rights." ***Id.*** at 30, 69.

In sum, neither Mother's arguments nor any evidence convinces us that the trial court abused its discretion or committed an error of law in granting the petition to involuntarily terminate Mother's parental rights. Thus, we affirm the trial court's order.

Order affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/20/2015</u>